(C. D. 718)

P. BEIERSDORF & CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 9, 1943)

*Eugene R. Pickrell* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

COLE, Judge: The merchandise involved herein is described on the invoice as "Woolfat Acid." It was exported from Hamburg, Germany, on April 14, 1938, and was entered at the port of New York on April 25, 1938. It was assessed with duty at 25 per centum ad valorem plus 3 cents per pound. The ad valorem rate was assessed under the provisions of paragraph 37 of the Tariff Act of 1930, which, so far as pertinent for the purposes of this case, reads as follows:

\* \* \* esters of all kinds not specially provided for, 25 per centum ad valorem: *Provided*, That no article containing more than 10 per centum of alcohol shall be classified for duty under this paragraph.

The assessment of 3 cents per pound was applied pursuant to the provisions of section 701 (8) of the Revenue Act of 1936. So far as material, that statute provides:

\* \* \* inedible animal fats, inedible animal greases, fatty acids derived from any of the foregoing, and salts of any of the foregoing; all the foregoing, whether or not refined, sulphonated, sulphated, hydrogenated, or otherwise processed, 3 cents per pound; \* \* \*.

The plaintiff claims that the merchandise at bar is not of a class subject to the provisions of section 701 (8) of the Revenue Act of 1936, *supra*, and further that the instant merchandise is either free of duty as a wax, not specially provided for, under paragraph 1796 of the Tariff Act of 1930, or dutiable at 20 per centum ad valorem under paragraph 1536 of that act as a manufacture of wax, not specially provided for. The paragraphs of the tariff act relied upon are:

PAR. 1796. Wax: Animal, vegetable, or mineral, not specially provided for.

PAR. 1536. Candles, 27½ per centum ad valorem; manufactures of amber, bladders, or wax, or of which these substances or any of them is the component material of chief value, not specially provided for, 20 per centum ad valorem.

The primary question presented is whether the commodity in question is a wax for tariff purposes.

The record before us consists of a sample of the product under consideration, exhibit 1, and the oral testimony of three witnesses, all well qualified analytical chemists.

The witnesses agreed in their testimony concerning all of the salient factors regarding the method of production and the composition of the merchandise in question. It is shown beyond doubt that the product is derived from a wool grease known as lanolin which is an inedible animal grease; that lanolin or wool grease is distilled or saponified with alkali under pressure to obtain wool grease fatty acids; that whether distillation or saponification is followed is immaterial for the resulting product is substantially the same, the only difference being the content of unsaponifiable matter; that the fatty acids thus obtained are heated together with glycerin, and after esterification the

substance is cooled, the glycerin skimmed off, and it is then purified by boiling with charcoal in solution; and that after purification, the solution is evaporated leaving the imported merchandise, which is the glyceryl ester of wool-fat acids.

The results of analyses of the imported merchandise as made by the plaintiff and the defendant are as follows:

| | Plaintiff | Defendant |
|---|---|---|
| Melting Point | 58°–59° C | 58° |
| Specific Gravity | .969 | No determination |
| Acid Value | 3–3.9 | 3.9 |
| Ester Value | 121–124 | 124 |
| Saponification Value | 124–127.9 | 127.9 |
| Iodine Value | 16.3–18.8 | 18.8 |
| Unsaponifiable Matter | 2.1 percent | 22.1 percent |

It is disclosed thereby that except for the percentage of unsaponifiable matter contained therein, the findings of each analyst are substantially the same. Defendant's witness testified that he followed the Holde method in obtaining the percentage of unsaponifiable matter shown in the above tabulation, and that in applying a different and rather unsatisfactory method, he obtained a result of 30 per centum content of unsaponifiable matter.

However, the percentage of unsaponifiable matter in the merchandise at bar is not decisive of the question whether or not it is a wax.

Based on the analyses hereinabove set forth, it is the contention of the plaintiff that the merchandise at bar is a wax because of the close approximation of the values of properties thereof to the same properties in beeswax. As illustrative, counsel for the plaintiff, in his able brief, has given a comparison of the average characteristics of beeswax and those of exhibit 1, as follows:

| | Beeswax | Mdse at bar (exhibit 1) |
|---|---|---|
| Melting Point | 62°–65° C | 58°–59° |
| Specific Gravity | 0.962–0.966 | 0.969 |
| Acid Value | 17–22 | 3–3.9 |
| Ester Value | 70–82 | 121–124 |
| Saponification Value | 90–103 | 124–127.9 |
| Iodine Value | 6–13 | 16.3–18.8 |

Because the above average characteristics of the two commodities referred to are within close range of each other, the plaintiff claims that therefore the imported merchandise in question is to be considered a wax. Plaintiff's two witnesses stated that the product under consideration is a wax because of the high molecular content of the fatty acids, one testifying that the instant merchandise has the general appearance of beeswax, although slightly more tacky, and that it is not inedible animal grease because its melting point is too high and its physical appearance does not simulate inedible animal grease, the

latter being softer; while the other stated that this merchandise is a wax made from animal grease, and therefore is an animal wax or manufactured animal wax.

The defendant contends that the merchandise at bar is not a wax because it has a more greasy and unctuous consistency than wax, that its composition is different, and, in addition, it is a glyceride. Witness for the Government regards the difference in the melting point between this product and beeswax as "quite a difference," and is of the opinion that this merchandise more closely resembled an animal fat, a synthetic animal fat. He never heard of an animal wax being a glyceride.

In the case of *Lutz* v. *Magone*, 153 U. S. 105, it was held that, in interpreting tariff laws, "words are to be taken in their commonly received and popular sense, or according to their commercial designation, if that differs from the ordinary understanding of the word." It is also well established that tariff laws are not written in terms of science, but in the language of commerce, which is presumptively that in common use. *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436; *United States* v. *Merck & Co.*, 8 Ct. Cust. Appls. 171, T. D. 37288. The foregoing principles of tariff construction were upheld recently in *Hummel Chemical Co.* v. *United States*, 29 C. C. P. A. 178, C. A. D. 189, wherein certain merchandise commonly known as "woolgrease" was held to be dutiable as inedible animal grease although from a scientific or chemical standpoint it was regarded as a wax.

It becomes pertinent at this juncture to consult definitions of "wax" as found in leading dictionaries. Webster limits the term to "A substance secreted by bees" that is specifically referred to as beeswax, and then adds that it may be "any of various substances resembling beeswax." Funk and Wagnalls say that wax is "A yellow fatty solid of animal origin" and includes "any of several substances of wax-like appearance and consistency." The Century Dictionary gives a very comprehensive definition. It defines "wax" as—

A thick, sticky substance secreted by bees, and used to build their cells; the material of honeycomb; beeswax.

\* \* \* \* \* \* \*

(c) The product of some other homopterous insects. \* \* \* (d) The secretion of the sebaceous glands of the outer ear; cerumen; ear-wax. (e) A vegetable product which may be regarded as a concrete fixed oil, the principal varieties being Chinese wax, cow-tree wax, carnauba wax and Japan wax. It may be obtained from the pollen of many flowers, and it forms a part of the green fecula of many plants, particularly of the cabbage. \* \* \* (f) A mineral product, one of certain fossil hydrocarbons which occur in small quantities generally in the Carboniferous formation: called more fully *mineral wax*. The most familiarly known variety is *ozocerite*.

The extent to which these definitions are to be applied in determining the scope of paragraph 1796, *supra*, is reflected in information concerning waxes contained in the Summary of Tariff Information, 1929 (vol. 2, pp. 2636–2637), which was compiled for the use of the Committee on Ways and Means of the House of Representatives in connection with the enactment of tariff legislation. The following excerpt therefrom presents one illustration:

### WAXES

Description and uses.—Beeswax is described under paragraph 1458 which provides for white bleached beeswax. The crude beeswax enters under paragraph 1693. The waxes of this paragraph are substances which in physical properties resemble beeswax and are mixtures of compounds containing carbon, hydrogen, and oxygen. Vegetables waxes are obtained from the fruit, leaves, or stems of many plants, a small number only being of commercial value. The principal vegetable waxes are carnauba, candelilla, Japan wax, myrtle or bayberry, and Cochin China or cay-cay. Chinese or insect wax, though classed as vegetable, is really an animal wax. The mineral waxes, similar to paraffin (par. 1633), come from natural bituminous substances; the most important are ceresin and montan.

Following this general paragraph, there are explanations of the sources and descriptions of the different uses of each of the waxes specifically referred to.

Considering the dictionary definitions in the light of the above reference to the Summary of Tariff Information, the merchandise at bar is not within the provision for "waxes" as contemplated by paragraph 1796, *supra*. The commodity in question is rather the result of a chemical process applied to a substance known as lanolin which is a wool grease. And wool grease is not a wax. *Hummel Chemical Co.* v. *United States, supra.*

We find that the imported product is neither a wax nor the manufacture of a wax for the purposes of tariff classification. In its imported condition, it is a material recognized as the glyceryl ester of wool-fat acids that is used in the manufacture of a skin lotion. Since it is not disputed that the merchandise is an ester, the collector's classification of the merchanidse as such under paragraph 37, *supra*, is therefore sustained.

In claiming that the instant merchandise is not subject to the tax of 3 cents per pound imposed under the Revenue Act of 1936, counsel for plaintiff argues:

The question for determination is whether a product resulting from the esterification of wool fatty acids with glycerine is fatty acids "otherwise processed."

But this is not the issue presented by virtue of the assessment made under section 701 (8) of the Revenue Act of 1936 herein. The esterification of wool fatty acids with glycerin is merely one of the steps followed in the chemical process which converted the wool grease into

the product that was imported. The basic product from which this merchandise was obtained is wool grease, which. was admitted by plaintiff's witness to be an inedible animal grease. It therefore follows that the merchandise at bar is provided for under the provisions of section 701 (8) of the Revenue Act of 1936 as "* * * inedible animal greases, * * * whether or not refined, sulphonated, sulphated, hydrogenated, or otherwise processed," and subject to assess-ment thereunder at 3 cents per pound, as applied by the collector.

The protest is overruled in all respects and the action of the collector is affirmed. Judgment will be entered accordingly.